MORROW v. COLE.

(Filed May 19, 1903.)

1. FRAUDULENT CONVEYANCES—*Notice—Executors and Adminis-trators.*

In an action for land alleged to have been fraudulently sold by an administrator, a subsequent purchaser is entitled to an issue as to whether he bought with notice of the fraud.

2. FRAUDULENT CONVEYANCES—*Executors and Administrators—Notice.*

In an action for land alleged to have been fraudulently sold by an administrator, it is error for the trial court to instruct that the title of a subsequent purchaser depended on whether he knew of the rights of an heir to the property, without reference to the knowledge of the purchaser of the fraudulent sale.

3. FRAUDULENT CONVEYANCES—*Notice.*

In an action to recover land alleged to have been fraudulently sold by an administrator, it is error for tne trial court to instruct that if the administrator was guilty of fraud in making the sale that subsequent purchasers were guilty of fraud without adding that such subsequent purchaser must have had notice of such fraud.

4. FRAUDULENT CONVEYANCES—*Executors and Administrators—Damages.*

An administrator whose sale of realty is set aside by an heir for fraud is not liable for injury to such realty committed by his grantee, it not appearing that he aided in such injury.

ACTION by J. O. Morrow and wife against G. H. P. Cole and others heard by Judge *W. B. Council* and a jury, at May Term, 1902, of the Superior Court of HENDERSON County. From a judgment for the plaintiffs, the defendants appealed.

*J. C. Martin, Geo. A. Shuford* and *W. J. Peele,* for the plaintiffs.
*Merrimon & Merrimon,* for the defendants.

MONTGOMERY, J.    The plaintiff's mother, at the time of her death in 1877, had title to the tract of land which is the subject of this action, and that title descended to the plaintiff at the mother's death, she being her only heir at law. The father of the plaintiff, who is now dead, became tenant by the curtesy upon the death of his wife in 1877. He afterwards married again, and he with his wife conveyed the land in *fee simple* with warranty to the defendant Long, who, in exchange, conveyed to the father of the plaintiff another tract of land. Long mortgaged the tract of land which he acquired, by exchange from the father of the plaintiff, to the defendant Cole, and when the debt fell due Cole demanded his money, and Long procured the services of Rickman to raise money on the land to pay the Cole debt. In the investigation of the title Rickman found that Long got no title in the exchange with the plaintiff's father, and so informed Long and Cole. Rickman said he could perfect the title. The plaintiff alleged in her complaint that Rickman, Long and Cole conspired to cheat and defraud the plaintiff, who was then Mary R. Dunlap an infant under 21 years and a resi-

dent of the State of South Carolina, out of her land with
the view of perfecting the title in Long and Cole, by causing
the land to be sold under a proceeding to be instituted in the
Superior Court of Henderson County, ostensibly for the pur-
pose of creating assets with which to pay the debts of the
plaintiff mother, although she owed no debts whatever, which
all the parties knew. The undisputed evidence shows that
Rickman was appointed administrator of Mary R. Dunlap,
the plaintiff's mother, that he immediately filed his petition
in the Superior Court of Henderson County in which he al-
leged that Mary R. Dunlap died seized of the land, leaving
as her only heir at law the plaintiff Mary R. Morrow, then
Mary R. Dunlap, an infant about 12 years of age, that Mary
Dunlap the deceased, owed debts to the amount of about
$1,000 and that she left no personal estate whatever. The
petitioner asked that service of summons be had upon said
non-resident defendant by publication as required by law.
A summons was issued and returned by the sheriff of Hen-
derson County with the endorsement that the defendant (the
plaintiff here) was not to be found in that county. After-
wards H. C. Johnson, a cousin of Rickman, was appointed
guardian *ad litem* of the defendant in that proceeding, the
plaintiff in this, and Rickman wrote the answer for the said
guardian *ad litem* in which he admitted all the allegations
of the complaint. Johnson testified that, relying upon repre-
sentations made by Rickman and Long, he signed the answer.
An order of sale was procured under which Rickman sold the
land and Long bid it in at $500. The sale was reported and
confirmed, and Rickman executed a deed to Long on Novem-
ber 29, 1890, the consideration recited being $500. No cash
was paid by Long. He simply passed his receipt to Rick-
man for the $500 "to be credited for that amount on my
claim against said estate, this being the amount of my bid
for said land." Four months afterwards Cole foreclosed his

mortgage against Long, and at the sale Maddry, an employee
of Cole, bid off the property, Cole as mortgagee executing a
deed to said Maddrey. Maddrey afterwards reconveyed to
Cole. No money was paid by Maddrey. Afterwards Long
conveyed the tract of land to Cole for the nominal considera-
tion of $25. On March 1, 1886, following, Cole executed
a deed for said land to the defendant Guice. The complaint
contains an allegation that Guice paid only a nominal con-
sideration for the land and took the deed with full knowledge
of the plaintiff's right in said land and of the said fraudu-
lent proceeding instituted and conducted by the said T. J.
Rickman in the Superior Court of the said County of Hen-
derson, for the purpose of bringing said land into sale and of
depriving the plaintiff, Mary R. Morrow, of her said prop-
erty. The plaintiff further alleges that the proceeding in-
stituted by Rickman for the sale of the land, and the sale of
the land thereunder, and the deed made by Rickman to Long
were fraudulent and void, and did not divest the title of the
plaintiff in said land, but that she is still seized of the same
and entitled to the possession thereof against Guice, who is
in the unlawful possession of the same. There was evidence
against Rickman, Long and Cole going to show the fraud al-
leged in the complaint, and the jury found in the affirmative
the first issue—"was the sale of the land described in the
complaint procured by fraud as alleged?"

The defendant Guice was entitled to have an issue submit-
ted to the jury, which he tendered, but it was refused. That
issue was in these words: "If the sale was fraudulent on the
part of Long, Cole and Rickman, did Guice take his deed with
knowledge of the same?" The word "notice" would have
been a more appropriate word than "knowledge" and may
be substituted for the word "knowledge" in the issue to be
submitted on the next trial. Instead of submitting the above
issue, his Honor submitted one in the following words: "Did

P. H. Guice one of the defendants in this action, take title
to the land in controversy from George H. P. Cole with no-
tice of the rights of the plaintiff, Mary R. Morrow, in said
land ?"    The jury answered that issue in the affirmative.    It
seems to us that the jury might have well understood that the
sense of the issue, which was submitted, was that if Guice had
heard that the plaintiff was her mother's sole heir and had
inherited the land, that would be sufficient to require him to
investigate the proceedings in the Superior Court instituted
by Rickman for a sale of the land, beyond looking to see
whether the court had jurisdiction of the subject matter of
the suit and of the parties and the decree ordering the sale,
before he could become a *bona fide* purchaser for value with-
out notice.    What if he did know that the plaintiff acquired
her land through descent from her mother, the proceeding
in the Superior Court instituted by Rickman were regular
in all respects, and their inspection was a full protection to
him, unless he knew or had notice of matters which if ex-
amined into would reasonably lead him to a knowledge of the
fraud perpetrated by Rickman, Long and Cole by means of
the Special Proceeding referred to.    The complaint as we
have said, alleged that he had knowledge of the fraud in the
Special Proceeding.    There was no evidence that he had any
knowledge of the fraudulent character of these proceedings.

The court erred, too, in charging the jury on the issue
which was submitted as to Guice's conduct.    His Honor said
"If the plaintiff's evidence has greater weight upon your
minds, and leads you to the conclusion that he, Guice, did
have knowledge and bought with knowledge of the rights of
Mary R. Morrow, you should answer 'yes' otherwise 'No'."
That did not explain to the jury what would constitute the
rights of Mary R. Morrow, and, because taken in connection
with the 9th special prayer asked by the plaintiff, he might
have come to the conclusion, as he had a right to do, that the

claims and rights of the plaintiff had been disposed of by the sale of the defendant Rickman, the administrator, and, further, because it assumes as matter of law that notice of her claims and rights would have resulted in a knowledge of a fraud charged in the complaint; whereas it should have been left to the jury as a question of fact, upon the evidence, whether or not Guice made proper investigation on account of any notice which he might have had; and it should also have been left to the jury to say whether or not as a matter of fact the notice, if any which the defendant Guice had of the plaintiff's claim, was notice to him of the fraud of Rickman.

As we have said, there was evidence of the fraudulent conduct of Long and Rickman and Cole in the special proceeding under which the land was sold. But in the giving of the third and ninth special prayers asked by the plaintiff, the court charged the jury, in effect, that Cole and Guice would both be guilty of fraud and conspiracy on account of the action and misconduct on the part of Rickman. The jury of course were authorized to find Cole guilty of fraud, for his knowledge of the fraudulent character of the proceedings in the sale of the land; but they could not do so because of anything Rickman did without their knowledge or consent. The giving of the 6th prayer requested by the plaintiff was erroneous as to Rickman. The matters therein set forth were not fraudulent as a conclusion of law, as his Honor instructed the jury, but were matters which ought to have been left to the jury for them to say what the intent of Rickman was under the evidence. After the deed from Rickman administrator to Long, Long committed certain injuries to the freehold which greatly impaired the value of the property. Upon the verdict that the land had been damaged by Long, since the sale to him by Rickman, to the amount of $250, his Honor entered up judgment of his own motion against Rickman for that amount. There was no allegation in the com-

plaint that Rickman was responsible for this damage, nor was there any evidence in the case that the damage to the property was the result of, or connected with the fraud of Rickman and others. Long had been in possession of the property for a number of years under a deed from the plaintiff's father. Rickman had never been in possession of the land, and he had had no connection with it, but only with the title. There was no evidence that he aided or abetted Long in committing waste upon the property. He was only charged by the plaintiff with a fraudulent conspiracy with others to sell and pass title to the property to perfect the title of Long and Cole.

New Trial.

DOUGLAS, J., concurring in result only: I concur in the granting generally of a new trial with some reluctance. I do not think that Rickman is responsible for the damages awarded in this action, because the plaintiff has not lost title to her land. If she has lost her land as a result of Rickman's misconduct, then I think Rickman would be liable.

On the other hand I do not see how the jury could have been misled by the form of the fourth issue, which was as follows: "Did P. H. Guice, one of the defendants in this action, take title to the land in controversy from G. H. P. Cole with notice of the rights of the plaintiff, Mary E. Morrow, in said land?" The court seems to think that the jury might not know what rights were referred to. It means of course the rights which the plaintiff is asserting in this action. There is nothing else to which it could refer. If the plaintiff had any rights in the land at the time Guice bought, and if he then had any notice, either actual or constructive of such rights, he bought subject thereto. The opinion of the court says that Guice was entitled to the issue he tendered, as follows: "If the sale was fraudulent on the part of Long, Cole and Rickman, did Guice take his deed with knowledge

of the same?" To my mind this is clearly error. It was not necessary that Guice should know of his own knowledge that the proceedings were fraudulent. It would be enough if he had sufficient information to put him upon notice, which would hold him liable, not only for such knowledge as he already possessed, but also for such further knowledge as he might have acquired by proper investigation. It is true the court says that "the word 'notice' would have been a more *appropriate* word than 'knowlege'," but these words have different meanings, and "notice" was the only word that could properly have been used. As the issue tendered by the defendant was erroneous *per se,* there can be no error in its refusal.

The opinion says that Guice "might have come to the conclusion, as he *had a right to do* that the claims and rights of the plaintiff had been disposed of by the sale of the defendant Rickman, administrator." This cannot be so. The illegality of that proceeding is the basis of this action, and if Guice had the legal right to come to any such conclusion without further investigation, it would seem unnecessary to submit any issue to the jury as to him.

There is some important evidence that seems to have been overlooked by the court in its opinion. There is not only testimony tending to prove that Guice knew that the land descended to the plaintiff as sole heir at law of her mother, but he himself testifies that he was told by Dr. Cole, from whom he bought, that "there had been some trouble about the title," but that he made no investigation whatever, as Dr. Cole told him that it was all right and he (Cole) would stand between him and all danger. Knowing that the plaintiff had inherited the land, it would seem that he might have asked her if she still made any claim to it.

Walker, J., concurs in the opinion of Douglas, J.